UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARREN DREWREY, :
:
    Plaintiff, : Civil Action No.: 08-1411 (RMU)
:
v. : Re Document No.: 29
:
HILLARY CLINTON, in her official :
capacity as the Secretary of the :
U.S. Department of State, :
:
    Defendant. :

# MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff, an African-American, brings this action against his employer, the Department of State, asserting claims of disparate treatment based on his race and retaliation for his involvement in protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. For the reasons discussed below, the court grants the defendant's motion for summary judgment.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

The plaintiff has been employed by the defendant since 1988. Compl. ¶ 6. In 2003, he obtained a position as a Management Analyst at the GS-12 level, in the Management Support

---

[1] The plaintiff has not provided the court with any of his own declarations or exhibits in support of his claims. *See generally* Pl.'s Opp'n. Due to the dearth of evidence submitted by the plaintiff in opposition to the defendant's motion for summary judgment, the court relies predominately on the defendant's factual presentation, but to the extent possible, also refers to the relevant facts presented in the complaint and the plaintiff's statement of genuine facts in dispute.

Division ("MSD") of the Department of State's Bureau of Overseas Building Operations ("OBO"). *Id*.; Def.'s Statement of Material Facts ("Def.'s Statement") ¶ 1. At all times relevant to this suit, the plaintiff was supervised by Roberto Coquis, the Director of the MSD. Def.'s Statement ¶¶ 2-3. From November 2005 until August 2008, the plaintiff and Coquis, a Hispanic, engaged in a series of escalating employment-related disputes. *See generally* Compl.; Def.'s Mot., Ex. T ("Coquis Decl.") ¶ 1.

On November 17, 2005, Coquis assigned the plaintiff to the position of Travel Office Manager and directed the plaintiff to relocate to the Travel Office by the following month. Def.'s Mot, Ex. A; Compl. ¶¶ 3, 12; Def.'s Statement ¶ 5. Because of his parental obligations and the schedule that those obligations demanded, the plaintiff "had reservations about moving his office and also about taking the duties" of that position. Compl. ¶ 12. According to the defendant, the plaintiff refused to accept his new assignment of duties. Def.'s Statement ¶ 5.

On May 24, 2006, Coquis confronted the plaintiff regarding the plaintiff's "alleged misuse of leave" approximately two months earlier. Compl. ¶ 13; *see generally* Def.'s Mot., Ex. I. According to the defendant, the plaintiff had turned in a leave slip for one hour of leave but later sought and received permission from Coquis to take off the remainder of the workday. Def.'s Mot., Ex. I at 1. When Coquis required that the plaintiff to submit a leave slip for the unaccounted time, *id.*, the plaintiff purportedly shouted at Coquis and accused Coquis of abusing his own leave privileges, Coquis Decl. ¶ 7.

On August 1, 2006, Coquis conducted a mid-year review of the plaintiff and rated the plaintiff's performance "unacceptable" in three critical areas. Def.'s Mot., Ex. Q. The plaintiff received a memorandum entitled "deficiencies in your performance," advising him that a formal [p]erformance [i]mprovement [p]lan would be implemented unless his performance improved.

2

Def.'s Mot, Ex. Q at 1; Compl. ¶ 14. In a meeting with the plaintiff, Coquis asked the plaintiff to review the areas of deficiency and submit a report "on each item detailing how [he] would improve [his] performance." *Id.* The plaintiff allegedly responded, "I know what you are doing," walked out of the meeting and refused to sign the memorandum. *Id*. When the plaintiff's performance had not improved by January 2007, Coquis placed the plaintiff on a performance improvement plan. Def.'s Mot., Ex. II.

Shortly after receiving this negative performance review, on August 7, 2006, the plaintiff contacted an EEO counsellor. Compl. ¶ 28. In September 2006, Coquis learned that the plaintiff had filed an EEO complaint, *id*. ¶ 31, "based on claims of racial discrimination in connection with the alleged deficiencies in his performance," Pl.'s Statement ¶ 9.

On November 13, 2006, one of the plaintiff's co-workers contacted Diplomatic Security, the security force at the Department of State, because she was "concern[ed] with the [the plaintiff's] unpredictable behavior . . . [and was] concerned that this may turn into violence in the workplace." Def.'s Mot., Ex. AA. As a result of these allegations, Diplomatic Security investigated the plaintiff between November 16, 2006 and December 31, 2007. Def.'s Mot., Ex. BB. During the course of the investigation, Diplomatic Security attempted to interview the plaintiff but reported that he "became argumentative and refused to cooperate." *Id.*

On April 18, 2007, the plaintiff and Coquis met with human resources personnel and a union representative to confer about the plaintiff's overall performance and his 2007 performance improvement plan. Compl. ¶ 16; Def.'s Statement ¶ 32. Part way through the meeting, Coquis and the plaintiff were excused and walked out of the conference room together. Def.'s Statement ¶ 32. At this point, the plaintiff allegedly turned to Coquis and stated, "I am going to get you." Compl. ¶ 16; Def.'s Statement ¶ 33. Coquis returned to the conference room

and informed the other individuals attending the meeting of the plaintiff's alleged statement. Def.'s Statement ¶ 33. Coquis also notified Diplomatic Security and the police of the plaintiff's statement. *Id.*

Immediately, the plaintiff was placed on non-duty pay status by the executive director of OBO. Def.'s Statement ¶ 35; Def.'s Mot., Ex. EE. Soon thereafter, Diplomatic Security initiated a second investigation of the plaintiff. Def.'s Mot., Ex. FF at 1. Diplomatic Security also issued a memorandum instructing the plaintiff to undergo a psychiatric examination by a Department of State psychiatrist. Compl. ¶ 18.

On July 12, 2007, the Department of State issued a notice of a "proposal of removal," alerting the plaintiff that it was considering removing the plaintiff from his position. Compl. ¶ 10. The proposal was based on information collected by Diplomatic Security in the course of their two investigations, commencing in November 2006 and April 2007. Def.'s Mot., Ex. GG at 1 ("Removal Proposal") at 1. The proposed grounds for removal were the plaintiff's "insolent behavior towards [his] supervisor" and his "threatening behavior." Def.'s Mot, Ex. HH at 2. The Department of State concluded that the plaintiff had behaved insolently based on the plaintiff's November 2005 discussion with Coquis regarding the plaintiff's reassignment of duties, the May 2006 incident regarding the plaintiff's leave slip and the plaintiff's August 2006 reaction to receiving the memorandum outlining "inadequacies in [his] performance." *Id.* at 2-4. The alleged "threatening behavior" by the plaintiff was based on the April 2007 incident, in which he allegedly stated to Coquis, "I am going to get you." *Id.* at 5-8.

On November 5, 2007, the defendant received a final decision on the proposal for removal from the Deputy Assistant Security of the Bureau of Human Affairs ("the Deputy"). *See generally id.* The Deputy informed the plaintiff that the defendant considered the plaintiff's

4

refusal to cooperate with the Diplomatic Security's November 2006 investigation as an "aggravating factor" but declined to "rely on the remaining past discipline presented in the proposal letter" because those events "should no longer be considered based on the time that has passed" and because "most were considered informal discipline." *Id.* at 8-9. Ultimately, the Deputy concluded that removal was warranted based on the April 2007 incident alone but decided to mitigate the proposed removal to a sixty-day suspension without pay. *Id.*; *see also* Compl. ¶ 19.

In August 2008, the plaintiff commenced this action against the defendant, claiming that it had discriminated against him on the basis of his race and that it retaliated against him for his previous EEO activity.[2] *See generally* Compl. More specifically, the plaintiff asserts that Coquis discriminated and retaliated against him by (1) falsely accusing him of refusing to move his office in November 2005, (2) providing the plaintiff with a negative mid-year performance review and placing the plaintiff on a performance improvement plan, (3) falsely accusing the plaintiff of not turning in a leave slip, and (4) falsely accusing the plaintiff of threatening Coquis on April 17, 2006, an accusation which resulted in the plaintiff's placement on administrative leave, proposed removal and suspension. Pl.'s Opp'n at 10-12. The defendant filed this motion for summary judgment on June 21, 2010. *See generally* Def.'s Mot. With the defendant's

---

[2] The plaintiff's opposition appears to raise a hostile work environment claim for the first time. *See* Pl.'s Opp'n at 12 (stating that a "continuing chain of events" were "pervasive enough in severity and offensiveness that it created an abusive work environment"). "It is well-established in this district that a plaintiff cannot amend his [c]omplaint in an opposition to a defendant's motion for summary judgment." *Jo v. Dist. of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008). The court, therefore, will not consider a possible hostile work environment claim where the plaintiff has not clearly asserted such a claim and attempts to raise it for the first time in opposing the defendant's motion for summary judgment. *See Worthey v. Snow*, 2006 WL 1722331, at *4 (D.D.C. June 20, 2006) (declining to consider a hostile work environment claim asserted for the first time in the plaintiff's opposition to a summary judgment motion).

motion now ripe for consideration, the court turns to the parties' arguments and applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

### B. Legal Standard for Race Discrimination and Retaliation

When the defendant in a Title VII discrimination or retaliation case presents a legitimate, non-discriminatory reason for its actions,[1] the district court need resolve only one question to adjudicate a motion for summary judgment: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [and non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Jones v. Bernake*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying *Brady* in the retaliation context). The court must consider whether the jury could infer discrimination or

---

[1] In those rare cases in which the defendant fails to present a legitimate, non-discriminatory reason for its actions, the court must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (noting that once the defendant presents a legitimate non-discriminatory reason "the *McDonnell Douglas* framework . . . disappears, and the sole remaining issue is discrimination *vel non*" (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973))); *see also Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (explaining that "the prima facie case is a largely unnecessary sideshow").

retaliation from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination or retaliation that may be available to the plaintiff. *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### C. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-

13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### D.  The Court Grants the Defendant's Motion for Summary Judgment

#### 1.  The Plaintiff Failed to Timely Exhaust His Administrative Remedies for the November 2005 and May 2006 Incidents

The defendant argues that under Equal Employment Opportunity Commission ("EEOC") regulations, employees must contact an EEO counselor within forty-five days of the allegedly discriminatory incident.  Def.'s Mot. at 6.  The defendant therefore concludes that any discrete act which occurred before June 23, 2006, forty-five days before the plaintiff first contacted an EEO counselor on August 7, 2006, is time-barred.  *Id.*  According to the plaintiff, the "the November 2005 incident and the challenges to Plaintiff's leave are part of an ongoing pattern of hostility exerted upon Plaintiff by Mr. Coquis."  Pl.'s Opp'n at 12.  Without asserting any supporting case law, the plaintiff argues that summary judgment is inappropriate because "whether or not the incidents fail to fall within the continuing violation theory is an issue of fact" for the jury to decide.  *Id.* at 13.

Pursuant to 29 C.F.R. § 1614.105(a)(1), an employee who believes he or she has been discriminated against "must initiate contact with a[n EEO c]ounselor within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  A plaintiff's failure to initiate such contact presents sufficient reason for dismissal of claims that are based on those allegedly discriminatory acts.  *See Rafi v. Sebelius*, 377 Fed. Appx. 24, 25 (D.C. Cir. 2010) (affirming the district court's dismissal of an employee's discrimination claim on the grounds that he failed to contact an EEO counselor within the forty-five day deadline (citing 29 C.F.R. § 1614.105(a))).  Indeed, the Supreme Court has rejected the use of the "continuing violations

doctrine" which previously may have allowed a suit to include any "discriminatory or retaliatory acts that are plausibly or sufficiently related to" at least "one act that falls within the charge filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Stated otherwise, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Thus, although "prior acts" can be used as "background evidence in support of a timely claim," they are not independently actionable. *Id.*

Two of the events discussed by the plaintiff in his complaint occurred more than forty-five days before the plaintiff initiated contact with the EEOC on August 7, 2006: the plaintiff's November 17, 2005 discussion with Coquis regarding the plaintiff's reassignment of duties and the May 24, 2006 incident regarding the plaintiff's leave slip. *See* Compl. ¶¶ 12-13. The plaintiff's failure to seek timely EEO counselling based on these incidents bars him from raising those alleged violations here, and the plaintiff cannot remedy his failure to exhaust administrative remedies by asserting that the defendant's actions were "serial violations." *See Morgan*, 53 U.S. at 114. Nor has the plaintiff offered anything to indicate that equitable doctrines such as tolling or estoppel apply. *See generally* Pl.'s Opp'n.; *see also Williams v. Munoz*, 106 F. Supp. 2d 40, 43 (D.D.C. 2000) (explaining that a plaintiff's failure to contact an EEO counselor within the required time may be tolled for extraordinary circumstances). Accordingly, the court grants the defendant summary judgment to the extent that the plaintiff has asserted claims of discrimination and retaliation based on the November 2005 and May 2006 incidents described above.

### 2. The Plaintiff Fails to Rebut the Defendant's Legitimate Non-Discriminatory Reasons for Its Actions

The defendant submits that any adverse employment action it took was caused by the plaintiff's "repeated failures to perform at acceptable levels and correct performance problems, insubordination and unprofessionalism in cursing and refusing to following direct orders from his supervisor." Def.'s Mot. at 30. The defendant further asserts that the plaintiff has failed to raise any inference of discrimination or retaliation. *Id.*

The plaintiff responds that Coquis discriminated and retaliated against him by intentionally misconstruing and misrepresenting the incidents at issue. Pl.'s Opp'n at 4-8. The plaintiff also submits that "the record is replete with testimony of other employees . . . who believe that [Coquis] has a problem with non-whites" and that his actions toward the plaintiff were discriminatory and retaliatory. *Id*. at 9. More specifically, the plaintiff refers to comments made by three of his coworkers during telephone interviews conducted by the defendant as part of its investigation relating to the plaintiff's 2006 EEOC complaint. *See id.*, Ex. CC. Lastly, with regard to his retaliation claim, the plaintiff argues that the "close proxim[ity] in time of the [filing of his EEOC] complaint['s] filing and [the] commencement of [the defendant's] harassment and adverse actions in and of itself supports [the p]laintiff's claim of retaliation." Pl.'s Opp'n at 2.

An employee's insubordination and his failure to perform his duties are legitimate, non-discriminatory reasons for adverse employment actions. *See e.g.*, *Smith v. Dist. of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (affirming that an employee's negligence and insubordination (including discourteous treatment of her supervisor) provided the employer with a legitimate nondiscriminatory reason for its actions). Accordingly, the defendant has asserted a

legitimate nondiscriminatory reason for the actions taken toward the plaintiff, and the court must determine whether the plaintiff has provided evidence from which a reasonable juror could conclude that the proffered justifications were mere pretext. *See id.*

Although the plaintiff attempts to demonstrate that the defendant's justifications are false by attacking Coquis's credibility, he provides no evidence in support of his argument that Coquis misrepresented the various events that took place. *See generally* Pl.'s Opp'n. Indeed, the plaintiff has not provided the court with even his own sworn statement refuting Coquis's version of the events, and at times appears to concede that he indeed made the statements but did not intend for them to come across as threats. *See* Pl.'s Opp'n at 10 (arguing that he was "falsely accused of making physical threa[ts] of harm, simply because he remarked, 'I am going to get you'"). The plaintiff's arguments are unsupported by evidence and are insufficient to raise a genuine issue of fact regarding the falsity of the defendant's justifications. *See Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (holding that a reasonable jury could not infer discrimination based solely on a plaintiff's allegations); *Manuel v. Potter*, 685 F. Supp. 2d 46, 70 (D.D.C. 2010) (granting summary judgment on the plaintiff's retaliation claim where "the plaintiff offer[ed] no evidence outside of his own bald assertion that his supervisors possessed any retaliatory animus toward him").

Nor are the statements made in 2006 by three of the plaintiff's coworkers sufficient to allow a reasonable juror to infer discriminatory or retaliatory motives on behalf of the defendant. Two of the coworkers stated that they believed Coquis harassed the plaintiff because of retaliatory or discriminatory animus, while another coworker stated that she believed his actions were retaliatory but not discriminatory. Pl.'s Opp'n, Ex. CC at 11-18. None of these statements, however, provide any factual support for these allegations. *See id.* Without more, such

conclusory allegations, especially when set forth in unsworn interview summaries, are insufficient to constitute the type of "independent evidence of discriminatory statements or attitudes on the part of the employer," that would allow a plaintiff to demonstrate pretext. *Aka*, 156 F.3d at 1289; *see also Sage v. Broad. Publs.*, 997 F. Supp. 49, 53 (D.D.C. 1998) (observing that "[c]onclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue of material fact"). Accordingly, neither the plaintiff's broad unsubstantiated allegations nor those conclusory allegations by his coworkers are sufficient to demonstrate pretext and overcome the defendant's legitimate non-discriminatory reason. *See Hicks*, 509 U.S. at 515-16 (stating that a plaintiff must show that a defendant's reason was false and discriminatory or retaliatory in order to prove pretext).

Lastly, with respect to his retaliation claim, the plaintiff argues that the temporal proximity between the filing of his 2006 EEO complaint and the date of the defendant's adverse employment acts supports an inference of retaliation. Pl.'s Opp'n at 2. Whether a plaintiff is able to assert a prima facie case of retaliation is a fact considered by the court in determining if the plaintiff can show that the defendant's legitimate non-discriminatory reason is pretext for retaliatory motives. *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007). Although temporal proximity between the employer's knowledge of the protected activity and the adverse employment action is sufficient to show a causal connection, such proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

Here, four months elapsed between the time when Coquis learned that the plaintiff filed an EEO complaint (September 2006) and the time when the plaintiff was placed on a

performance improvement plan (January 2007). And seven months passed between the time that Coquis' learned of plaintiff's EEO activity and when he accused the plaintiff of threatening him at the April 2007 meeting. Thus, the temporal proximity is insufficient to establish a causal connection in this case. *See Clark Count Sch. Dist.*, 532 U.S. at 273. Moreover, even if the temporal proximity here was close enough to show a causal connection so as to satisfy a prima facie case for retaliation, this would not, without more, provide sufficient evidence to show pretext. *Porter v. Fulgham*, 601 F. Supp. 2d 205, 229 (D.D.C. 2009) (stating that "[t]emporal proximity of the [adverse employment action] and the plaintiff's earlier lawsuit, while it supports the finding of a prima facie case, is not, without more, proof enough to show that the Agency acted with retaliatory intent"), *rev'd on other grounds sub nom.*, *Porter v. Shah*, 606 F.3d 809 (D.C. Cir. 2010).

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of January, 2011.

RICARDO M. URBINA  
United States District Judge